UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTHONY PETERKIN,

                                        Plaintiff,

v.                                                    5:24-cv-0377
                                                     (GTS/TWD)


M. MULLIN, et al,

                                        Defendants.

_____

APPEARANCES:                            OF COUNSEL:

ANTHONY PETERKIN
*Plaintiff, pro se*
29613 Rt. 12, Apt. 7
Watertown, NY 13601

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.      INTRODUCTION

        The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Anthony Peterkin ("Plaintiff") brought pursuant to 42 U.S.C. § 1983, Dkt. No. 1, as well as a

motion to proceed *in forma pauperis* ("IFP"), Dkt. No. 2.  For the reasons stated below, the

Court recommends Plaintiff's complaint be dismissed.

## II.     IFP APPLICATION

        Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP.  Dkt.

No. 2.  Upon review, Plaintiff's IFP application demonstrates economic need.  *See id*. at 1-2.

Therefore, he is granted permission to proceed IFP.

## III.    BACKGROUND

Plaintiff alleges Senior Parole Officer M. Mullin and Parole Officer M. Delaney

("Defendants") violated his Sixth and Fourteenth Amendment constitutional rights.  Dkt. No. 1 at

3.  He contends the Defendants "contributed to extend my Post Release Supervision beyond the

Court ordered legally prescribed time."  *Id*. at 4.[1]  Plaintiff sets forth the facts of his case as

follows:

> On 02/18/21 I was released to the Jefferson County New York State
> Parole Supervision Watertown Sub-Area Office to begin my
> sentence's end of Post release supervision.  After being "MERIT
> RELEASE" to the parolre officers there.  (see, NYS PL 70.45(b)
> and annexed exhibit.  On 8/19/2022 Parole Officer M. Delaney came
> to my appartment seeking to enter to affect a serch.  I would not
> allow her to enter, stating emphatically that in accordance with law
> my sentence was ofically terminated.  Officer M. Delaney disagreed
> and wrongly circled incorrect dates upon a DOCCS computer Senior
> Parole Officer M. Mullin informed me that I would remain upon
> Parole supervision until my Maximum sentencd date, with
> reductions in time, in accordanc with the New 30/30 Laws.
> Ofcourse this was a misapplication of the law and a malicious and
> willful deceit done under the color of state Law to violate my 14th
> and 6th. U.S.C.A Rights.  This illegal state has continued for 16
> months or more.  As I still have not been issued an official letter of
> sentence termination.

*Id*.[2]  Plaintiff's claims are brought against Defendant Mullin in his official capacity and

Defendant Delaney in her individual capacity.  *Id*. at 2.

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the
Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are
reproduced exactly as they appear in the original and errors in spelling, punctuation, and
grammar have not been corrected.
[2] The Court notes the lower portion of one line of text contained in Plaintiff's complaint appears
to be cut off, *see* Dkt. No. 1 at 4, however, it is unclear whether any additional text may be
missing.  Plaintiff also references an "annexed exhibit", however, no such exhibit appears to
have been submitted.

The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") public administrative records which indicate Plaintiff was sentenced to an aggregate maximum sentence of ten years following his convictions of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree.[3]  Plaintiff's maximum expiration date is listed as May 1, 2023.[4]

Plaintiff avers "I suffer from Mental anguish daily thinking that I could be illegally re-arrested any day.  This state of perpetual mental anguish has caused physical problems with my health."  *Id*. at 5.  He requests two million dollars in compensatory and punitive damages and asks the Court to "Have NYSDOCCS issue an official letter of sentence termination . . . ."  *Id*.

## IV.    STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

---

[3] *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on Apr. 18, 2024); *see also*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . ."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

[4] The aforementioned DOCCS website further provides "[i]f an inmate has a maximum expiration date, maximum expiration date for parole supervision and/or a post release supervision maximum expiration date, the latest date is controlling."  *See also* N.Y. Penal Law § 70.45(a)-(b); *Livingston v. Annucci*, No. 9:18-CV-0803 (JKS), 2021 WL 1091464, at *3 n.5 (N.D.N.Y. Mar. 22, 2021) ("A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date.") (citing N.Y. Department of Corrections and Community Supervision Website, Offender Information Data Definitions, http://www.doccs.ny.gov/calendardatadefinitions.html).

The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.   ANALYSIS

Plaintiff's complaint asserts Sixth and Fourteenth Amendment due process clause claims against Defendant Mullin, in his official capacity, and against Defendant Delaney, in her individual capacity. *See* Dkt. No. 1 at 3 (identifying "14th U.S.C.A. and 6th U.S.C.A." as the rights violated).[5] For the reasons stated below, the Court recommends Plaintiff's complaint be dismissed with leave to amend.

---

[5] *See also* Dkt. No. 1 at 4 ("Each Defendant contributed to extend my Post Release Supervision beyond the Court ordered legally prescribed time.[ ]M.Delaney as Parole Officer and M. Mullin as co-conspirator Senior Parole officer.").

### A. Eleventh Amendment Sovereign Immunity

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009). "Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

"DOCCS, of which the Division of Parole is now a part, is a New York State agency that has immunity under the Eleventh Amendment." *Ennis v. New York Dep't of Parole*, No. 5:18-CV-0501 (GTS/TWD), 2018 WL 3869151, at *4 (N.D.N.Y. June 12, 2018) (citing *Rother v. Dep't of Corr. and Community Supervision*, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007)), *report and recommendation adopted*, 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018). "When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (additional citations omitted). As a result, "claims for money damages against state officials, including DOCCS officials and parole officers, sued in

their official capacities, are . . . barred under the Eleventh Amendment." *Ennis*, 2018 WL 3869151, at *4 (citing *Graham*, 473 U.S. at 167-68) (additional citations omitted).

Plaintiff's claims concerning Defendant Mullin are brought against him in his official capacity as a senior parole officer, therefore, they are barred by the Eleventh Amendment. Accordingly, the Court recommends Plaintiff's claims against Defendant Mullin in his official capacity be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) with prejudice. *See*, *e.g.*, *Partee v. City of Syracuse*, No. 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *8 (N.D.N.Y. May 23, 2019) (recommending dismissal of plaintiff's claims against parole officers" [a]s plaintiff has named the defendant-officers of the Division of Parole in their official capacities and seeks monetary damages, those claims are barred by the Eleventh Amendment.") (citing *Ennis*, 2018 WL 3869151, at *4), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019).

**B. Failure to State a Claim**

Next, Plaintiff has failed to allege facts plausibly suggesting a deprivation of his constitutional rights. Therefore, the Court recommends Plaintiff's remaining claims also be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

While Plaintiff states he told Delaney his "sentence was ofically terminated" sometime prior to August 19, 2022, Dkt. No. 1 at 4, and summarily alleges the Defendants "contributed to extend my Post Release Supervision beyond the Court ordered legally prescribed time," Dkt. No. 1 at 3, Plaintiff has not pleaded facts indicating when or how any court or other authority either terminated or otherwise modified the length of his sentence. Absent such information it is difficult to analyze Plaintiff's claims. In other words, Plaintiff's conclusory assertion that his Sixth and Fourteenth Amendment constitutional rights were violated has merely "alleged—but it

has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)) (internal quotations omitted).

Plaintiff's sole factual allegations against Defendant Delaney are that she (1) requested to enter Plaintiff's apartment on August 19, 2022, (2) disagreed with Plaintiff's statement that his sentence had been terminated, and (3) identified allegedly incorrect dates on a DOCCS computer. *See id.* at 4. Similarly, Plaintiff merely alleges Defendant Mullin told him he remained under parole supervision on some occasion prior to his maximum sentence date. *See id.* These bare facts do not give rise to a constitutional claim. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining, to establish liability under § 1983, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (citing *Iqbal*, 556 U.S. at 676) (internal quotations omitted).

Accordingly, the Court recommends the complaint be dismissed for failure to state a claim upon which relief may be granted. *See Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) ("A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'") (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also*, *e.g.*, *Mitchell v. Annucci*, No. 1:22-CV-0613 (DNH/DJS), 2022 WL 7271377, at *3 (N.D.N.Y. Aug. 29, 2022) (recommending dismissal of the plaintiff's § 1983 claim that officials conspired to deny his Fourteenth Amendment right to due process as wholly conclusory), *report and recommendation adopted*, 2022 WL 4354360 (N.D.N.Y. Sept. 20, 2022); *Scheidel v. Kosse*, No. 5:09-CV-1277, 2010 WL 3881496, at *3 (N.D.N.Y. Sept. 28, 2010) (dismissing for failure to state a claim plaintiff's complaint which merely alleged wrongdoing in conclusory fashion).

### C.  Leave to Amend

In deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends Plaintiff be afforded the opportunity to file an amended complaint to cure the deficiencies identified above.  *See Gomez*, 171 F.3d at 796.  The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any amended complaint submitted by Plaintiff must also demonstrate that a case or controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue.  Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference.  Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.  CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[6] and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[6] Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

     **IT IS SO ORDERED.**

Dated: May 6, 2024
     Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2018 WL 3869151
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie D. ENNIS, Plaintiff,

v.

NEW YORK DEPARTMENT OF PAROLE, Defendant.

5:18-CV-00501 (GTS/TWD)
|
Signed 06/12/2018

**Attorneys and Law Firms**

EDDIE D. ENNIS, 114 Franklin Street, Apt. 208, Watertown, New York 13601, pro se.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent the civil rights complaint of *pro se* Plaintiff Eddie D. Ennis ("Ennis") against sole Defendant, New York Department of Parole, to the Court for initial review. In this action, Plaintiff challenges the special conditions of release to parole supervision imposed upon him on his release from prison and into the custody of the Department of Corrections and Community Supervision ("DOCCS"), Division of Parole, on March 16, 2017, on the grounds the conditions deprive him of his fundamental constitutional rights.[1] (Dkt. No. 1 at 3.) Also before the Court are Plaintiff's application to proceed *in forma pauperis* ("IFP Application"), and a letter request for the assignment of counsel. (Dkt. Nos. 2 and 3.)

[1]
    The New York State Department of Correctional Services and the New York State Division of Parole merged to form DOCCS in 2011. *See* N.Y. Laws of 2011, Chapter 62. The Division of Parole is now a division of DOCCS. The Court will construe Plaintiff's complaint as having named DOCCS rather than the New York Department of Parole as Defendant.

**II. IFP APPLICATION**

The Court finds that Plaintiff has demonstrated the requisite economic need to proceed with this matter *in forma pauperis*. As a result, Plaintiff's IFP Application (Dkt. No. 2) is granted.

**III. INITIAL REVIEW**

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). [2]

[2]
    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not "show[n] that the pleader is entitled to relief." *Id.* at 679 (quoting Federal Rule of Civil Procedure 8(a)(2) ). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 12 of 47

Ennis v. New York Department of Parole, Not Reported in Fed. Supp. (2018)
2018 WL 3869151

an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

**\*2** Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV. PLAINTIFF'S COMPLAINT

On May 24, 2010, Plaintiff was sentenced to a term of imprisonment and five years of Post-Release Supervision after being convicted of a course of sexual conduct against a child in the first and second degree. (N.Y. Penal Law §§ 130.75(1)(a) and 130.80(1)(b) ). (Dkt. No. 1 at 29); *see also People v. Ennis*, 969 N.Y.S.2d 284, 285 (4th Dept. 2013). Upon his release in March 2017, Plaintiff was placed on Post-Release Supervision for five years and numerous special conditions of release to parole supervision were imposed on him. (Dkt. No. 1 at 3, 20-30.) The special conditions challenged by Plaintiff in this action involve being precluded from residing with his wife and two sons ages eleven and nineteen, and not being allowed to own or use a computer or other electronic device with access to the internet. *Id.* at 3-4.

### A. Family Related Special Conditions of Release

Plaintiff has been married to his wife since 1995. *Id.* at 7. His first son was born in 1998. *Id.* Plaintiff claims to have strong ties to his family and believes his children are suffering emotionally and mentally from the lack of stability and guidance that would be provided by having a father figure in the home, and his wife is being denied the right to cohabit with her husband and best friend in the same residence as their children. *Id.* at 7, 10.

Prior to his conviction in 2010, Plaintiff had no criminal record, no history of drug or alcohol abuse, and served in the military from 1991 until his incarceration. *Id.* at 7. His wife and children were not involved in the charges against him, which involved a minor female relative, and there are no orders of protection regarding his wife and children. *Id.* Plaintiff is considered low risk of re-offending on the Compass Risk Assessment. *Id.*

Plaintiff alleges he was informed by New York Parole that he will not be permitted to live with his family until his eleven year old son turns eighteen. *Id.* at 6. Plaintiff's parole officer has allowed Plaintiff to spend time with his eleven year old son since Easter 2007. *Id.* at 12. Plaintiff claims the reason he was given for not being permitted to reside with his family was that it would not comply with the Sexual Assault Reform Act ("SARA"). *Id.* at 6. According to Plaintiff that is not the case. *Id.* at 6-7. Plaintiff contends not permitting him to reside with his family is punitive in effect, constitutes an abuse of discretion, and is arbitrary. *Id.* at 7. Plaintiff further contends it deprives him of a liberty interest in violation of the Fourteenth Amendment to the United States Constitution, and violates the Ex Post Facto Clause of the New York State Constitution (Art. I § 10). *Id.*

### B. Computer and Internet Use Related Special Conditions of Release

Plaintiff alleges that the special conditions of parole imposed on him completely ban him from owning and/or using a computer or other electronic device with the ability to access the internet for the purpose of continuing his education, conducting legal research, conducting business, or other legal activity such as continuing his post-conviction process to vacate the criminal judgment in his case even though the crime for which he was convicted had absolutely nothing to do with a computer or the internet. (Dkt. No. 1 at 13.) Plaintiff claims he is not allowed by parole to have a laptop in his apartment and is not allowed to type and print his own court motions forcing him to seek the assistance of others. *Id.* According to Plaintiff, the only computer and internet access permitted by his parol officer is supervised use to seek employment at the Work Place in Watertown, New York. *Id.*

## V. LEGAL ANALYSIS

### A. Special Conditions of Parole

**\*3** Parolees are not without constitutional rights. *United State ex rel. Sperling v. Fitzpatrick*, 426 F.2 1161, 1164 (2d Cir. 1970). They are, however, subject to "restrictions not applicable to other citizens," and while on parole enjoy only "conditional liberty properly dependent on observance of

2018 WL 3869151

special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). While parolees do not have a protected liberty interest in being free from special conditions of parole, they may have a viable due process claim under § 1983 based on the substance of the conditions and/or the basis for imposing the conditions. *See Singleton v. Doe*, No. 14-CV-0303 (MB), 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014) (citing *Maldonado v. Fischer*, No. 11-CV-1091Sr., 2012 WL 4461647, at *5 (W.D.N.Y. Sept. 24, 2012) ); *Maldonado*, 2012 WL 4461647, at *5 (finding due process claim under § 1983 where allegations related to "the *substance* of the special conditions at issue ... and the basis for their imposition") (emphasis in original).

As a general rule, "the imposition of conditions whether imposed prior to or subsequent to release, by the parole board or a field parole officer must be upheld as long as they are reasonably related to the parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses." *Trisvan v. Annucci*, 284 F. Supp. 3d 288, 298-99 (E.D.N.Y. 2018) (quoting *Singleton*, 2014 WL 3110033, at *3); *Robinson v. New York*, No. 1:09-cv-0455 (GLS/RFT), 2010 WL 11507493, at *6 (N.D.N.Y. Mar. 26, 2010) (where a special condition of parole "is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation.").

### 1. Family Related Claims

A parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by substantive due process. *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005); *see also Troxel v. Granville*, 530 U.S. 57, 65-6 (2000) (plurality opinion) ("[T]he interest of parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents[.]"). "Children have a parallel constitutionally protected liberty interest in not being dislocated from the emotional attachments that derive from the intimacy of daily family association." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (citation omitted).

The well-established principles regarding familial association have been applied to analogous parole conditions by the Second Circuit. In *Myers*, a case involving supervised release in the federal system, the Court applied strict scrutiny in considering a special condition of supervised release prohibiting the defendant "from spending time alone with his

child absent authorization from the U.S. Probation Office." *Myers*, 426 F.3d at 120. The Second Circuit held that to satisfy substantive due process, such a restriction on a releasee's liberty "must reflect the heightened constitutional concerns" of strict scrutiny, thus requiring the deprivation to be "narrowly tailored to serve a compelling state interest." *Id.* at 126.

In *United States v. McGeoch*, 546 F. App'x. 44 (2d Cir. 2013) (summary order), the Second Circuit applied strict scrutiny to a parole condition that restricted the defendant's contact with his sons, by barring him from any contact with a person under age eighteen unless supervised by a person approved by the parole officer. *Id.* at 48. Without taking any position on whether the parole condition was warranted, the Court held that an individualized evaluation of the threat the defendant actually posed to the safety of his children was necessary, writing:

> **\*4** Absent an individualized inquiry into whether [the defendant's] sexual proclivities pose a threat to his sons ... the imposition of a harsh condition of supervised release that either prohibits interaction with his children or makes such interaction subject to supervision by a person approved by the probation officer violates the [defendant's] due process rights.

*Id.* at 49 (citation omitted).

### 2. Computer and Internet Use

Plaintiff claims that the special conditions of parole to which he is subject completely ban him from owning and/or using a computer or other electronic device with the ability to access the internet for the purpose of continuing his education, conducting legal research, conducting business, or other legal activity such as continuing his post-conviction process to vacate the criminal judgment in his case even though the crime for which he was convicted had absolutely nothing to do with a computer or the internet. (Dkt. No. 1 at 13.) As explained above, special conditions of parole are subject to judicial challenge if they are not related to a parolee's criminal history, are arbitrary and capricious, or are not designed to

Case 5:24-cv-00377-GTS-TWD    Document 4    Filed 05/06/24    Page 14 of 47

Ennis v. New York Department of Parole, Not Reported in Fed. Supp. (2018)

2018 WL 3869151

deter recidivism and prevent further offenses. *See Trisvan, 284 F. Supp. 3d at 298-9; Robinson, 2010 WL 11507493, at *6.* The Plaintiff has alleged in his complaint that the crimes for which he was convicted were unrelated to computers and the internet. (Dkt. No. 1 at 13.)

### B. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment bars claims for money damages and injunctive or declaratory relief against a state or an arm of the state unless the state has specifically waived, or Congress has abrogated, its sovereign immunity. *See Cory v. White, 457 U.S. 85, 90-91 (1982); Edelman v. Jordan, 415 U.S. 651, 667-69 (1974).* New York State has not waived its sovereign immunity and Congress has not abrogated its sovereign immunity in § 1983 actions. *See Jones v. N.Y. Div. of Military & Naval Affairs, 166 F.3d 45, 49 (2d Cir. 1999).*

DOCCS, of which the Division of Parole is now a part, is a New York State agency that has immunity under the Eleventh Amendment. *See Rother v. Dep't of Corr. and Community Supervision, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013)* (DOCCS is a state agency for purposes of the Eleventh Amendment and thus immune from suits for money damages and injunctive relief); *Heba v. New York State Div. of Parole, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007)* (barring § 1983 action against the New York State Division of Parole on Eleventh Amendment immunity grounds). Therefore, the Court finds that Plaintiff's claims against DOCCS are barred by the Eleventh Amendment.

The Court notes that claims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are also barred under the Eleventh Amendment. *See Kentucky v. Graham, 473 U.S. 159, 167-68 (1985); Davis v. Jackson, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *4 (S.D.N.Y. Sept. 30, 2016)* (claims for damages against DOCCS officials sued in their official capacity are barred under the Eleventh Amendment). *James v. Suffolk County Correctional Facility, No. 13-CV-2344 (JFB) (SIL), 2014 WL 4659300, at *4 (E.D.N.Y. Sept. 17, 2014)* (official capacity claims for money damages against parole officers are barred under the Eleventh Amendment). The Eleventh Amendment also bars retroactive injunctive and declaratory relief against state officials sued in their official capacities but generally does not bar claims for prospective injunctive or declaratory relief against those officials. *See Tsirelman v. Daines, 794 F.3d 310, 313-14 (2d Cir. 2015), cert. denied, 136 S.Ct. 811 (2016)* (citing *Ex Parte Young, 209 U.S. 123 (1907)* ).

### C. Personal Involvement by State Officials

**\*5** Suits for money damages against state officials, including DOCCS officials and parole officers in their individual capacities, are not barred by the Eleventh Amendment. *Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993)* (citing *Hafer v. Melo, 502 U.S. 21, 31 (1991)* ); *Hafer, 502 U.S. at 31* ("[w]e hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983"). However, personal involvement of the state official in the alleged violation of constitutional rights is a prerequisite to an award of damages under § 1983. *See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).*

"Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal, 556 U.S. at 676.* ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012)* (citing *McKinnon v Patterson, 568 F.2d 930, 934 (2d Cir. 1977)* ); *see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003)* (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)* ). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).*

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).* [3]

Case 5:24-cv-00377-GTS-TWD Document 4 Filed 05/06/24 Page 15 of 47

Ennis v. New York Department of Parole, Not Reported in Fed. Supp. (2018)

2018 WL 3869151

3          The Second Circuit has expressly declined to
           determine whether *Iqbal* eliminated any of the
           *Colon* bases for liability. *See Grullon v. City of New
           Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Courts have found the requisite personal involvement by
parole officers who have been involved in the imposition or
enforcement of special conditions of parole. *See, e.g., Farrell
v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (enforcement
of special condition of parole by parole officers "would
clearly constitute personal involvement in any violation of
[plaintiff's] constitutional rights"); *Cooper v. Dennison*, No.
08-CV-6238P, 2009 WL 349135, at *2 (W.D.N.Y. Feb. 6,
2009) (Section 1983 claim regarding the imposition of special
conditions of parole found to survive initial review). Courts
have also allowed claims for prospective injunctive relief as to
certain future applications of special parole conditions against
the DOCCS Commissioner in his official capacity. *See, e.g.,
Doe v. Annucci*, No. 14 Civ. 2953 (PAE), 2015 WL 4393012,
at *15 (S.D.N.Y. July 15, 2015).

**\*6** Thus, while Plaintiff cannot sue the New York State
Division of Parole, now merged into DOCCS, he may be able
to allege claims against individuals personally involved in the
special conditions of parole being challenged by him.

### D. Opportunity to Amend
After reviewing the complaint, the Court finds that it alleges
facts sufficient to state claim for violation of Plaintiff's due
process rights under the Fourth Amendment for purposes
of surviving initial review under 28 U.S.C. §§ 1915(e).
However, the Court also finds that due to its sovereign
immunity under the Eleventh Amendment, Plaintiff's claim
cannot be asserted against DOCCS. The Court therefore
recommends that Plaintiff be granted leave to submit an
amended complaint naming those individuals he determines
to be proper party defendants for review by the Court within
forty-five days from the date the District Court files its order
on this Court's Report-Recommendation, and that the action
be dismissed with prejudice against DOCCS on Eleventh
Amendment grounds when Plaintiff submits an amended
complaint, or at the end of the forty-five days regardless of
whether Plaintiff has submitted an amended complaint.

## VI. LETTER REQUESTING APPOINTMENT OF COUNSEL

Plaintiff has submitted a letter motion requesting appointment
of counsel. (Dkt. No. 3.) The Court finds that a more fully
developed record would be necessary for an assessment
to be made as to whether counsel should be appointed.
*See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir.
1997) (court must look to the likelihood of merit of
the underlying dispute in determining whether to appoint
counsel). Moreover, Plaintiff's letter motion does not include
evidence of an attempt by him to find counsel to represent
him on his own as is required before seeking appointment
of counsel from the court. *See Terminate Control Corp. v.
Horowitz*, 28 F.3d 1335 (2d Cir. 1994). Therefore, the letter
motion is denied. The denial is without prejudice so that
Plaintiff will not be precluded from making a subsequent
motion for appointment of counsel on in the event he submits
an amended complaint that survives initial review. [4]

4          A form for use on a motion for appointment of
           counsel is available on the Northern District of
           New York website at http:www.nynd.uscourts.gov.
           If Plaintiff is unable to obtain the form from
           the internet, the form may be requested from the
           Clerk's Office.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's IFP application (Dkt. No. 2) is
**GRANTED**; and it is

**RECOMMENDED**, that Plaintiff be granted leave to file an
amended complaint naming those individuals he believes to
be proper defendants within forty-five days from the filing
of an order by the District Court on this Court's Report-
Recommendation; and it is further

**RECOMMENDED**, that the action (Dkt. No. 1) be dismissed
with prejudice against DOCCS on Eleventh Amendment
grounds when Plaintiff submits an amended complaint or at
the end of the forty-five days regardless of whether Plaintiff
has submitted an amended complaint; and it is hereby

**ORDERED** that Plaintiff's letter motion for appointment of
counsel (Dkt. No. 3) be **DENIED** without prejudice; and it
is further

**ORDERED**, that the Clerk provide Plaintiff with a copy of
this Order and Report-Recommendation, along with copies
of all unpublished decisions cited herein in accordance with
*Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

2018 WL 3869151

**\*7** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[5]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3869151

---

End of Document                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3862683
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie D. ENNIS, Plaintiff,

v.

NEW YORK DEPARTMENT OF PAROLE,

Tina Stafford, Director, Defendant.

5:18-CV-0501 (GTS/TWD)
|
Signed 08/14/2018

**Attorneys and Law Firms**

EDDIE D. ENNIS, 114 Franklin Street, Apt. 208, Watertown, New York 13601, pro se.

**DECISION and ORDER**

HON. GLENN T. SUDDABY, Chief United States District Judge

**\*1**  Currently before the Court, in this *pro se* civil rights action filed by Eddie D. Ennis ("Plaintiff") against the New York Department of Parole ("Defendant"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be dismissed unless, within forty-five days of the issuance of a Decision and Order adopting the Report-Recommendation, Plaintiff files an Amended Complaint correcting its pleading defects. (Dkt. No. 5.) Plaintiff has not filed an objection to the Report-Recommendation, and the deadline in which to do so has expired. (*See generally* Docket Sheet.) Instead, Plaintiff has filed an Amended Complaint attempting to correct the pleading defects identified by Magistrate Judge Dancks in the Report-Recommendation. (Dkt. No. 6.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiff's Amended Complaint is accepted for filing and will be referred to Magistrate Judge Dancks for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e).

[1]  When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 5) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is accepted for filing and this action is referred to Magistrate Judge Dancks for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e).

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3862683

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 18 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

2019 WL 2617901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Cedric PARTEE a/k/a Webb, Plaintiff,
v.
The CITY OF SYRACUSE, et al., Defendants

Civil Action No. 5:19-CV-0417 (TJM/DEP)
|
Signed 05/23/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: CEDRIC PARTEE, Pro Se, 32 Candlelight Circle, Apt. A, Liverpool, NY 13090.

FOR DEFENDANTS: NONE.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff Cedric Partee, a New York State parolee, has commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against the City of Syracuse ("City"), a City police officer, and various employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging that defendants violated a number of his rights arising under the United States Constitution. Plaintiff's complaint and an amended application for leave to proceed *in forma pauperis* ("IFP") submitted by the plaintiff have been forwarded to me for review. Based upon my consideration of those materials, I am granting plaintiff's amended IFP application, and recommending that his complaint be accepted only with respect to his Fourth Amendment claim asserted against one individual defendant.

I. BACKGROUND

Plaintiff Cedric Partee, who also claims to be known as "Webb," commenced this action by the filing of a complaint, accompanied by a number of appended exhibits in support of his claims, on April 8, 2019. Dkt. No. 1; Dkt. No. 1-1. According to those documents, plaintiff was convicted in 1984, upon a jury verdict, of murder in the second degree, in violation of N.Y. Penal Law § 125.25, and was sentenced to an indeterminate term of imprisonment of twenty-five years to life. Dkt. No. 1-1 at 67. Plaintiff complains that his original

written order of commitment contains a number of clerical errors in contravention of N.Y. Correction Law § 601-a that must be addressed by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71).

Plaintiff's claims appear to have as their genesis his release from state custody, in 2014, to lifetime parole supervision. Dkt. No. 1 at 4; Dkt. No. 1-1 at 16, 58. Under the terms of that release, plaintiff was required to, *inter alia*, abstain from the use of alcohol and refrain from fraternizing with those known to have criminal records. Dkt. No. 1-1 at 16, 19-20, 58.

Although plaintiff's prolix pleading is peppered with constitutional and legal buzzwords, his claims are predicated upon his contention that defendants conspired, in various forms, to charge him with parole violations that he did not commit. *See generally* Dkt. No. 1; Dkt. No. 1-1. Plaintiff claims that he was accused by officers of consuming alcohol, striking his wife, Tina Chambliss-Partee, and being involved in an altercation with his brother-in-law, John Chambliss, on the evening of July 14, 2016, culminating in his arrest by defendant C. Cowan, a City police officer. *See generally* Dkt. No. 1; Dkt. No. 1-1.

On July 18, 2016, as a result of the incident, plaintiff received a notice of parole violation, in which he was charged as follows:

CHARGE #1: [Plaintiff] violated Rule #7, of the rules governing his release in that on 07/14/16, he was in the company of John Chambliss, a person with a known criminal history who is supervised by the Syracuse Area Office.

CHARGE #2: [Plaintiff] violated Special Condition #13(c), of the rules governing his release, in that on 07/14/16, he consumed alcohol.

**\*2** CHARGE #3: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye.

CHARGE #4: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye, resulting in his arrest for assault.

CHARGE #5: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 19 of 47
**Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)**

2019 WL 2617901

the safety and well-being of John Chambliss by having a physical altercation with him.

Dkt. No. 1-1 at 56-57; *see also* Dkt. No. 1 at 10. [1]

[1]     In addition to the notice of parole violation, plaintiff appears to have also been charged criminally in connection with the July 14, 2016 events, although one count of assault in the third degree was dismissed in the interest of justice pursuant to N.Y. Criminal Procedure Law § 170.30(1)(g) by the Syracuse City Court on September 6, 2016. Dkt. No. 1-1 at 65.

On September 13, 2016, the matter proceeded to a final parole revocation hearing, at which plaintiff was represented by counsel. Dkt. No. 1-1 at 15-72. Although plaintiff denied each of the allegations raised at the hearing, the charges alleging violations with regard to not consuming alcohol, fraternizing with a person known to have a criminal record, and engaging in a physical confrontation, were sustained, leading ultimately to the revocation of his parole and imposition of a twenty-four-month additional period of incarceration. [2] *See generally* Dkt. No. 1, Dkt. No. 1-1; *see also Partee v. Stanford*, 159 A.D.3d 1294 (3d Dept 2018) (confirming the revocation of plaintiff's parole).

[2]     Although Ms. Chambliss-Partee was subpoenaed by the DOCCS to testify at the final revocation hearing, she failed to appear. Dkt. No. 1-1 at 39. She subsequently provided plaintiff with a notarized statement in which she summarily stated as follows:

     I ... did not tell my brother John Chambliss that [plaintiff] ... hit me. I don't know why he lied at [plaintiff's] parole rehearing on September 13, 2016.

     Dkt. No. 1-1 at 13.

As relief for the foregoing, plaintiff seeks monetary damages in excess of $40 million, as well as injunctive relief of an unspecified nature. Dkt. No. 1 at 14-15.

## II. DISCUSSION

### A. IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400.00, must ordinarily be paid. [3] 28 U.S.C. § 1914(a). A court is

authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [4] Although plaintiff has submitted a completed, amended IFP application, in it he indicates that he receives no income from any sources whatsoever. Dkt. No. 2. It strains credulity that plaintiff has no source of income at all, even if it is in the form of public assistance, Social Security benefits, or financial help from friends or relatives. [5] *See id.* However, for purposes of this order, report, and recommendation, I will assume that plaintiff is financially eligible for IFP status. [6] *See id.*

[3]     The total cost for filing a civil action in this court is $ 400.00, consisting of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $ 50.00.

[4]     The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[5]     Indeed, according to documents appended to the plaintiff's complaint, he claims to receive Social Security supplemental security income ("SSI") payments. *See* Dkt. No. 1-1 at 59.

[6]     Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

### B. Sufficiency of Plaintiff's Complaint

#### 1. Standard of Review

**\*3** Because I have found that plaintiff meets the financial criteria for commencing this action IFP, I must next consider the sufficiency of plaintiff's claims in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 20 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or the factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (internal quotation marks and emphasis omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## 2. Analysis of Plaintiff's Claims

**\*4** Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also* 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights[,]' .... [but] merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### a. Personal Involvement of Defendants Moss and Snyder

In his complaint, plaintiff names Supervising Parole Officers "Moss" and "J. Snyder" as two of the defendants sued. Other than listing these defendants under "Parties to Action" and in

Case 5:24-cv-00377-GTS-TWD    Document 4    Filed 05/06/24    Page 21 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

the "Relief Requested" sections of his complaint, however, those defendants are nowhere mentioned in the body of plaintiff's complaint.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)) (internal quotation marks omitted). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under [the] law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

Because plaintiff has made only passing reference to defendants Moss and Snyder in his complaint, and has included no factual allegations regarding their conduct, he has failed to plausibly allege their personal involvement in any constitutional violations. Accordingly, I recommend that plaintiff's complaint be dismissed as against those defendants based upon their lack of personal involvement.

### b. City of Syracuse

Plaintiff names the City of Syracuse as a defendant, yet fails to plausibly allege any facts that would support a claim against that entity. A municipal entity may be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Municipal liability for the acts of its employees can be established in several ways, including through "proof of an officially adopted rule or widespread, informal custom" demonstrating " 'a deliberate government policy or failing to train or supervise its officers.' " *Bruker v. City of N.Y.*, 337 F. Supp.

2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent official policy," *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have acquiesced in or condoned a known policy, custom, or practice that violates federal law. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

**\*5** In this case, plaintiff has failed to allege the existence of a specific policy of the City of Syracuse that led to the constitutional violations asserted in his complaint. Instead, he has merely alleged that the City should be held accountable based upon its alleged failure to properly hire, train, and supervise it employees. *See, e.g.*, Dkt. No. 1 at 8. Such a conclusory allegation is insufficient to states a plausible municipal liability claim. *Simms v. City of New York*, 480 Fed. App'x 627, 631 n.4 (2d Cir. 2015) (noting that plaintiff's "conclusory allegation that the City failed to train its officers, without any supporting factual material" is insufficient to state a claim for municipal liability under section 1983). Accordingly, I recommend that plaintiff's claims against the City of Syracuse be dismissed.

### c. N.Y. Correction Law § 601-a and Defendant Annucci

While the primary thrust of plaintiff's complaint stems from the circumstances leading to the revocation of his parole, plaintiff also complains that defendant Anthony J. Annucci, the Acting Commissioner of the DOCCS, failed in his obligation to correct various clerical errors appearing in plaintiff's original order of commitment, as well as other documents concerning plaintiff, and which are maintained by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71). Although his claims against Annucci are inartfully pled, plaintiff appears to allege that because the written order of commitment referred to him as "Cedric Partee," rather than "Cedric Webb," and indicated that his NYSID was 4064899K, rather than 4064899M, the sentence imposed was illegal, resulting in a violation of his constitutional rights. [7]

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 22 of 47
**Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)**
2019 WL 2617901

[7]   At the same time, plaintiff appears to suggest that at least the clerical error with respect to his NYSID was corrected "by the Administration of Correction[,]" but that the correction "resulted in a lost [sic] of jurisdiction." Dkt. No. 1 at 12.

More specifically, plaintiff claims that his constitutional rights were violated by virtue of the fact that the Annucci, in his capacity as the Acting Commissioner of the DOCCS, was derelict in his duties arising under N.Y. Correctional Law § 601-a. That section directs the DOCCS to bring any sentencing irregularities to the attention of the sentencing court so that a defendant can be resentenced to comply with the law.[8] Assuming that at least some aspect of a successful challenge to the correctness of the written order of commitment would not result in plaintiff's immediate or speedier release from parole supervision, such that the sole procedure available is a habeas corpus proceeding, plaintiff's claim is nonetheless not cognizable under section 1983. Any alleged clerical error in a written order of commitment implicates an issue of state law. *See, e.g., Jackson v. Annucci*, No. 18-CV-1162, 2018 WL 7959122, at *5 (Dec. 19, 2018) (Sannes, J.) (citing *Vasquez v. Loiodice*, No. 07-CV-7164, 2009 WL 2575775, at *2 (S.D.N.Y. Aug. 20, 2009)), *reconsideration denied*, 2019 WL 1517580 (N.D.N.Y. Apr. 8, 2019). The proper procedure for the plaintiff to challenge the perceived inadequacies with the written order of commitment is by commencing an "appropriate proceeding" with the sentencing court. *See, e.g., Jackson*, 2018 WL 7959122, at *6; *Matter of McCullaugh v. DeSimone*, 111 A.D.3d 1011, 1012 (3d Dept 2013).

[8]   Specifically, that section provides as follows:

Whenever it shall appear to the satisfaction of the department based on facts submitted on behalf of a person sentenced and confined in a state prison, that any such person has been erroneously sentenced, it shall be the duty of the department to communicate with the sentencing court, the inmate's defense attorney and the district attorney of the county in which such person was convicted. If upon investigation, the sentencing court, the defense attorney or the district attorney believes that the person has been so erroneously sentenced, the sentencing court, or the district attorney acting at the direction of the sentencing court, shall notify the department and arrange for the person to be heard and properly resentenced. The department thereupon

shall comply with any court order to produce such person from such prison and cause him or her to be taken before the court in which he or she was sentenced for the purpose of resentence. N.Y. Corr. Law § 601-a.

**\*6**   Based upon the foregoing, I find that plaintiff's claim against defendant Annucci arising under N.Y. Correction Law § 601-a is not cognizable under section 1983, and I therefore recommend that it be dismissed.

### d. The *Heck* Doctrine

When a plaintiff seeks "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Estes v Doe*, No. 97-CV-8133, 1999 WL 983886, at *3 (S.D.N.Y. Oct. 29, 1999) (quoting *Heck*). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983." *Estes*, 1999 WL 983886, at *3. Therefore,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487.

Significantly, *Heck* and its "favorable termination" rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole. *See, e.g., Bratton v. New York State Div. of Parole*, No. 05-CV-950, 2006 WL 2792743, at *2 (N.D.N.Y. 2006) (Mordue, J.) ("District courts have applied the *Heck* holding

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 23 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

to section 1983 lawsuits based on the revocation of parole.") (citing *inter alia Dallas v. Goldberg*, 143 F. Supp. 2d 312, 322 (S.D.N.Y. 2001) ("The *Heck* holding applies equally in the parole revocation context.")); *see also Loving v. Harris*, No. 05-CV-3411, 2005 WL 1961420, *3 (E.D.N.Y. 2005).

Plaintiff's complaint contains a number of naked assertions, though is otherwise conspicuously devoid of factual enhancement, making the precise nature of his claims difficult to discern with any degree of certainty. Plaintiff appears to allege, however, that during the course of his arrest and resulting revocation hearing, he was deprived of equal protection of the law through the use of "discriminatory practices towards [him]." Dkt. No. 1 at 12; *see also id.* at 9-11. Specifically, plaintiff claims that defendants' improper actions were motivated by discriminatory animus against plaintiff as a "Categore [sic] 1 Parolee," and plaintiff was treated differently than similarly situated persons on parole. Dkt. No. 1 at 12; *see also id.* at 8, 11.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

 **\*7** Even assuming that plaintiff's allegations were sufficient to state a claim under the equal protection clause of the Fourteenth Amendment under Rule 8 and *Iqbal*, his equal protection claim fails under the rule promulgated in *Heck*. Plaintiff has not alleged facts that plausibly suggest that the decision to revoke his parole has been invalidated, vacated, overturned, or expunged. *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) ("However, [the plaintiff] does not allege that he has succeeded in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding."). Because plaintiff's equal protection claim "goes to the heart of the constitutionality" of his parole revocation, it therefore "call[s] into question the validity" of the revocation, and thus is not cognizable under section 1983. *See Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540, 2017 WL 9485714, at *11 (Jan. 12, 2017) (recommending dismissal of plaintiff's first amendment claim under the rule in *Heck* because it "[bore] on the validity of plaintiff's underlying conviction and sentence"), *report and*

*recommendation adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

Finally, to the extent that plaintiff's complaint can be read as challenging the terms and conditions of his supervised release—which plaintiff claims were applied as a result of a "conspiracy" among the defendants—this too "would necessarily imply the invalidity" of his parole revocation. *See Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 08-CV-0911, 2008 WL 4560098, at *2 (N.D.N.Y. Oct. 8, 2008) (McAvoy, J.) (finding that plaintiff's challenge to the terms and conditions of his supervised release was barred under *Heck*); *see also Davis*, 214 F. Supp. 2d at 316 (plaintiff's claim that his parole revocation was the result of inadequate parole revocation proceedings is barred under *Heck*).

Accordingly, I recommend that plaintiff's equal protection claim, as well as any claim challenging the conditions of his parole, be dismissed as barred pursuant to *Heck*.

### e. Fourth Amendment and Defendant Cowan

Plaintiff also alleges that defendant Cowan "forced plaintiff from his home[ ] without an arrest warrant" and handcuffed him on July 14, 2016, in violation of his rights under the Fourth Amendment. Dkt. No. 1 at 8, 10. Based upon these limited allegations, it is unclear whether that claim is based upon defendant Cowan's unlawful entry into plaintiff's home, an unlawful search and seizure, or both. What does appear clear from plaintiff's complaint and accompanying exhibits is that plaintiff does not challenge his actual arrest as violating the Fourth Amendment, since his arrest was conducted pursuant to a warrant. *See generally* Dkt. No. 1; *see also* Dkt. No. 1-1 at 57-59 (detailing plaintiff's purported violation of release to parole supervision and resulting arrest pursuant to a warrant). It appears that at the time Cowan approached plaintiff's home, however, no such warrant had yet been issued. *See* Dkt. No. 1 at 8; Dkt. No. 1-1 at 58.

The Fourth Amendment prohibits "unreasonable searches and seizures," and the Warrants Clause requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, "a search or seizure pursuant to a warrant is presumed valid." *U.S. v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *accord Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is ... a presumption of validity with

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 24 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

respect to the affidavit supporting [a] search warrant."); *see also U.S. v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).

While *Heck* would traditionally bar a plaintiff's claim brought pursuant to section 1983 under the circumstances discussed herein, the Supreme Court and the Second Circuit have both recognized that traditional Fourth Amendment claims are ordinarily not barred by *Heck* because, in light of exceptions to the exclusionary rule—such as the independent source doctrine and the inevitable discovery doctrine—a favorable outcome on a claim pursuant to 42 U.S.C. § 1983 would not necessarily demonstrate the invalidity of a related conviction, or in this instance, revocation of a parolee's supervised release. *Heck*, 512 U.S. at 487 n.7; *Fifield v. Barrancotta*, 353 F. App'x 479, 480-81 (2d Cir. 2009). Thus, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

**\*8** Here, although *Heck* may potentially bar plaintiff's claim that defendant Cowan illegally forced plaintiff from his home and handcuffed him, it is difficult to discern whether plaintiff's release under supervision would have been revoked absent Cowan's alleged interactions with plaintiff. Thus, in light of this uncertainty and considering the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and that defendant Cowan should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. I should note, however, that in recommending that the court require a response from defendant Cowan, I express no opinion as to whether plaintiff's claims can survive a properly filed motion to dismiss, motion for summary judgment, or whether he may prevail at trial.

### f. Eleventh Amendment Immunity

In his complaint, plaintiff asserts that his claims against the individual DOCCS Division of Parole defendants, which plaintiff has sued in both their individual and official capacities, are not barred by sovereign immunity afforded under the Eleventh Amendment. Dkt. No. 1 at 14. However, for the reasons set forth below, I reject that assertion.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *accord Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.). As plaintiff has named the defendant-officers of the Division of Parole in their official capacities and seeks monetary damages, those claims are barred by the Eleventh Amendment. *See Ennis v. N.Y. Dep't of Parole*, No. 5:18-CV-501, 2018 WL 3869151, at \*4 (N.D.N.Y. June 12, 2018) (Dancks, M.J.) ("[C]laims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are also barred under the Eleventh Amendment."), *report and recommendation adopted by* 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018).

The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), however, established an exception to state sovereign immunity where the plaintiff brings an action seeking injunctive relief against an individual in their official capacity for an ongoing violation. Specifically, "a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " *Olivo v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-0357, 2017 WL 2656199, at \*3 (N.D.N.Y. June 20, 2017) (Sannes, J.) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)). Liberally construing plaintiff's complaint, and considering that plaintiff has since been returned to his supervised release status, [9] I find that plaintiff has not alleged any facts to suggest an ongoing violation against him that would warrant prospective relief. *See id.* Thus, to the extent that plaintiff seeks injunctive relief against defendants in their official capacities, I recommend that those claims be dismissed as barred by the Eleventh Amendment.

9    DOCCS records matching plaintiff's department identification number (84A5009) indicate that on July 12, 2018, plaintiff was released on parole. *See* DOCCS Inmate Information, http://nysdoccslookup.doccs.ny.gov/

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 25 of 47

**Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)**

2019 WL 2617901

GCA00P00/WIQ3/WINQ130 (last visited May 22, 2019).

g. State Law Claims [10]

[10] Based upon my finding that plaintiff's federal claims against all defendants with the exception of defendant Cowan are subject to dismissal, I recommend that the court decline to extend supplemental jurisdiction over his state law claims against those defendants. *See* 28 U.S.C. § 1367(c) (3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, in this section I address only plaintiff's state law claims against defendant Cowan.

**\*9**   Finally, plaintiff's complaint also refers to defendant Cowan having committed state law torts, including malicious prosecution, intentional infliction of emotional distress, and fraud. Dkt. No. 1 at 8. Beyond suggesting that these torts occurred, plaintiff has failed to provide any further factual enhancement to his claims. *See Iqbal*, 556 U.S. at 678. For instance, assuming that plaintiff's intentional infliction of emotional distress was not otherwise time-barred pursuant to N.Y. Civil Practice Law and Rules § 215(3), plaintiff does not plausibly allege any facts that would suggest defendant Cowan engaged in extreme conduct that was so shocking and outrageous as to exceed all reasonable bounds of decency as required under New York law. *See Washington v. Cty. of Onondaga*, No. 5:04-CV-0997, 2009 WL 3171787, at \*86 (N.D.N.Y. Sept. 29, 2009) (Suddaby, C.J.) (defining actionable conduct for a claim of intentional infliction of emotion distress as conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a civilized society" (citations and internal quotation marks omitted)); *Lazo v. United States*, No. 06-CV-5438, 2007 WL 2948342, \*5 (S.D.N.Y. Oct. 9, 2007) ("The conduct of the Government employees in this case in seeking an arrest warrant and proceeding to a revocation hearing for a parolee who had never appeared for supervision plainly cannot be characterized as 'extreme and outrageous.' ").

Furthermore, plaintiff has not pled sufficient conduct to state a claim for malicious prosecution or fraud. To state a claim for malicious prosecution under New York law, plaintiff must establish the following four elements: "(1)

the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Caidor v. M&T Bank*, No. 05-CV-0297, 2006 WL 839547, at \*7 (N.D.N.Y. Mar. 27, 2006) (Scullin, J.) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)) (internal quotation marks omitted). Here, the proceedings at issue—the September 13, 2016 revocation hearing—were not terminated in plaintiff's favor as the decision to revoke plaintiff's supervised release was upheld. *See generally* Dkt. No. 1-1. Moreover, plaintiff has failed to plead that defendant Cowan acted with "actual malice" as the motivating factor for any of his actions. Considering plaintiff cannot meet these critical elements, his claim for malicious prosecution must fail.

Likewise, plaintiff has not established a claim for common law fraud under New York law. To state such a claim, plaintiff must demonstrate that "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Kearney v. N.Y.S. D.O.C.S.*, No. 9:11-CV-1281, 2013 WL 5437372, at \*14 (N.D.N.Y. Sept. 27, 2013) (Suddaby, C.J.) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)), *aff'd sub nom. Kearney v. New York State Dep't of Corr. Servs.*, 581 F. App'x 45 (2d Cir. 2014). A plain reading of plaintiff's complaint demonstrates that he has failed to plead the essential elements of a claim for fraud. Here, there is no mention in plaintiff's complaint of a materially false statement made by Cowan on which plaintiff relied. Additionally, plaintiff failed to plead that Cowan made any such statement with the intent to defraud plaintiff.

In sum, I find that plaintiff's claims fall well short of passing muster under Rule 8 and *Iqbal*, and accordingly, I recommend that plaintiff's state law claims be dismissed.

**C.** Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 26 of 47

**Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)**

2019 WL 2617901

replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*10**  In this case, it is possible that, with the inclusion of additional factual detail, plaintiff may be able to state a plausible section 1983 claim against all or some of the defendants. For that reason, I recommend that plaintiff be permitted to submit an amended complaint that cures the deficiencies identified in this report.

In the event that plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

## III. SUMMARY, ORDER, AND RECOMMENDATION

Having reviewed plaintiff's amended request for leave to proceed without prepayment of fees, although I am skeptical of the information provided by plaintiff, I find that his application demonstrates his entitlement to that status. Turning to the merits of plaintiff's complaint, however, and applying the standard set forth in 28 U.S.C. § 1915(e), I conclude that plaintiff's complaint fails to state a cognizable claim against any of defendants, with the exception of defendant Cowan. In deference to plaintiff's *pro se* status, I find that defendant Cowan should be directed to respond to the complaint insofar as it asserts a claim against him under the Fourth Amendment. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that plaintiff's complaint in this action (Dkt. No. 1) be ACCEPTED for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan, but that plaintiff's remaining claims, asserted against all other defendants named in this action be DISMISSED with leave to replead within thirty days of any decision and order adopting this report.

**\*11**  NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [11] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[11]     If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2019 WL 2617901

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2617901

---

**End of Document**                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 28 of 47

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2616954

2019 WL 2616954
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Cedric PARTEE a/k/a Webb, Plaintiff,
v.
The CITY OF SYRACUSE, et al., Defendants

Civil Action No. 5:19-CV-0417 (TJM/DEP)
|
Signed 06/26/2019

**Attorneys and Law Firms**

Cedric Partee, Liverpool, NY, pro se.

### DECISION & ORDER

THOMAS J. McAVOY, Senior United States District Judge

#### I. INTRODUCTION

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge. In his May 23, 2019 Order, Report, and Recommendation [Dkt. No. 6], Magistrate Judge Peebles recommends that plaintiff's complaint [Dkt. No. 1] be accepted for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan, but that plaintiff's remaining claims, asserted against all other defendants named in this action, be dismissed with leave to replead within thirty days of any decision adopting the report. Plaintiff did not file objections to the Order, Report, and Recommendation, and the time to do so has expired.

#### II. DISCUSSION

After examining the record, this Court has determined that the Order, Report, and Recommendation is not subject to attack for plain error or manifest injustice.

#### III. CONCLUSION

Accordingly, the Court **ACCEPTS and ADOPTS** the Order, Report, and Recommendation [Dkt. No. 6] for the reasons stated therein. Thus, it is hereby

**ORDERED** that plaintiff's complaint [Dkt. No. 1] is **accepted for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan.** Plaintiff's remaining claims, asserted against all other defendants named in this action, are **DISMISSED with leave to replead** by filing an amended complaint **within thirty (30) days of this Decision and Order**.

Plaintiff is advised that an amended complaint **supersedes in all respects** the prior pleading. Therefore, if plaintiff files an amended complaint, he **must properly allege in the amended complaint all factual bases for all claims asserted therein, and the amended complaint must be in compliance with** Rules 8 **and** 10 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2616954

Mitchell v. Annucci, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00377-GTS-TWD    Document 4    Filed 05/06/24    Page 29 of 47

2022 WL 7271377

2022 WL 7271377
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dontie S. MITCHELL, Plaintiff,

v.

Anthony J. ANNUCCI, Acting Commissioner
of DOCCS, and John or Jane Doe, Defendants.

1:22-CV-613 (DNH/DJS)
|
Signed August 29, 2022

**Attorneys and Law Firms**

DONTIE S. MITCHELL, Plaintiff, Pro Se, Albany, New York
12202.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**I. BACKGROUND**

 **\*1** Presently before the Court for review under 28 U.S.C. §
1915(e) is the Second Amended Complaint filed by Plaintiff.
Dkt. No. 12, Sec. Am. Compl. On June 24, 2022, this Court
issued a Report-Recommendation recommending that the
initial Complaint be dismissed. Dkt. No. 8. Plaintiff filed
objections to that Report-Recommendation and the same day
filed an Amended Complaint. Dkt. Nos. 9 & 10. The District
Court adopted the Report-Recommendation and referred the
pending Amended Complaint to the undersigned for review.
Dkt. No. 11. On August 2, 2022, Plaintiff filed the Second
Amended Complaint. Dkt. No. 12.

As discussed in greater detail in the prior Report-
Recommendation, under section 1915(e) the District Court
"shall dismiss the case at any time if the court determines
that ... the action or appeal-- (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus,
it is a court's responsibility to determine that a plaintiff may
properly maintain his or her complaint before permitting the
matter to proceed further.

The Second Amended Complaint in this action asserts claims
under 42 U.S.C. § 1983 and state law. *See generally* Sec. Am.
Compl. Plaintiff is on post-release supervision following a
term of imprisonment. *Id.* at ¶ 2. The Complaint alleges that
upon his release from custody, he began an effort to mentor
youth. *Id.* at ¶¶ 14-17. Plaintiff alleges that as a result of false
rumors within the community about illegal conduct on his
part, the Albany Police Department and state parole officials
began to investigate him. *Id.* at ¶¶ 19-34. This resulted in a
number of new conditions being placed on his post-release
supervision, including a directive that he not have contact
with individuals under age 18. *Id.* at ¶ 24.

**II. DISCUSSION**

**A. First Amendment Freedom of Speech and Association**

"The courts have [ ] consistently held that a parolee has no
constitutionally protected interest in being free from special
conditions of release." *Maldonado v. Fischer*, 2012 WL
4461647, at \*4 (W.D.N.Y. Sept. 24, 2012) (collecting cases).
"[U]nder New York law the Board of Parole is entitled to
impose conditions on the conditional release of an inmate."
*Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000). Plaintiff
alleges that a special condition imposed upon him restricting
his contact with individuals under the age of 18 violates his
free speech and association rights because he has made it
a personal mission to mentor young individuals. Sec. Am.
Compl. at ¶¶ 49-55.

With regard to Plaintiff's claim premised upon the right
to intimate association, the Court recommends dismissal.
"The right to intimate association includes two types of
associational rights: an individual's right to associate with
others in intimate relationships and a right to associate with
others for purposes of engaging in activities traditionally
protected by the First Amendment, such as speech and
other expressive conduct." *Jones v. Bay Shore Union Free
Sch. Dist.*, 947 F. Supp. 2d 270, 277 (E.D.N.Y. 2013)
(internal quotation omitted). As noted in the Court's prior
Report-Recommendation, the Court is aware of no authority
suggesting that the types of mentorships or informal familiar
bonds referenced by Plaintiff with young men in the
community, *see* Sec. Am. Compl. at ¶¶ 14 & 53, are "of the
sort that can be deemed constitutionally protectible." Report-
Recommendation at p. 3 (citing *Roberts v. U.S. Jaycees*,
468 U.S. 609, 619 (1984)). Nor does the fact that Plaintiff
works to promote the business interests of young men, Sec.

Mitchell v. Annucci, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00377-GTS-TWD    Document 4    Filed 05/06/24    Page 30 of 47

2022 WL 7271377

Am. Compl. at ¶ 17, bring his conduct within the ambit of expressive association. *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (right of association does not apply to "business relationships").

**\*2** Nor does this Court find, given the facts in the record, that Plaintiff's free speech claim can survive initial review. The precise nature of Plaintiff's purported free speech claim is unclear. While Plaintiff has alleged a close mentoring relationship with young individuals, he has not alleged the type of actual familial relationship that would clearly implicate constitutionally protected interests sufficient to state a claim. *See Peoples v. Leon*, 2021 WL 1582173, at \*12 (N.D.N.Y. Jan. 4, 2021), *report and recommendation adopted*, 2021 WL 977222 (N.D.N.Y. Mar. 16, 2021). The record in this case establishes that the mother of one of the youth Plaintiff alleges he mentors filed a police complaint against Plaintiff as a result of his conduct toward the child. Dkt. No. 1 at ¶ 23; Dkt. No. 4-1 at ¶ 23. These allegations, though not a part of the Second Amended Complaint itself, are properly considered on the initial review. *Matthews v. Betsinger*, 2018 WL 3872313, at \*2 (S.D. Ohio Aug. 15, 2018), *report and recommendation adopted sub nom., Matthews v. Dayton Police Dep't*, 2018 WL 4777090 (S.D. Ohio Oct. 3, 2018); *Medina v. Cuomo*, 2015 WL 13744627, at \*2 (N.D.N.Y. Nov. 9, 2015), *report and recommendation adopted*, 2016 WL 756539 (N.D.N.Y. Feb. 25, 2016). Given Plaintiff's own allegations in this regard, he has not alleged that the restriction is not "reasonably and necessarily related to the interests that the Government retains after his conditional release." *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972). Nor has Plaintiff alleged that the condition unduly restricts his ability to communicate the empowerment message he wishes to communicate. By his own pleading, he appears to only be engaged with a "few young people under the age of 18," Sec. Am. Compl. at ¶ 49, and he has long maintained that his advocacy group is not limited to individuals that young. *See Mitchell v. Cuomo*, 17-CV-892 (N.D.N.Y.), Dkt. No. 23, Am. Compl. (discussing UFD's role in working with state prison inmates).

As a result, the Second Amended Complaint fails to properly articulate facts sufficient to permit this claim to proceed.

## B. Retaliation

The second claim set forth in the Second Amended Complaint alleges that certain unspecified Defendants have retaliated against Plaintiff. Sec. Am. Compl. at ¶¶ 56-60. Plaintiff alleges that after he and a state legislator emailed officials about concerns regarding Plaintiff's treatment, "a high ranking official of Parole ordered that Plaintiff be given a very [broad] and all-encompassing special order preventing Plaintiff from having any contact or communications with any persons under the age of 18 years old without their [sic] being any specific reason, purpose, or basis behind it." *Id.* at ¶¶ 58-59. He further claims that his home was ransacked by Parole authorities about a week later. *Id.* at ¶ 60.

"To prevail on a First Amendment retaliation claim, [a plaintiff] must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.' " *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Under this standard, the Court recommends that Plaintiff's retaliation claim be dismissed. The Court presumes that Plaintiff's described contact with parole officials about the restrictions placed on him is protected speech. *See* Sec. Am. Compl. at ¶ 58. Plaintiff then alleges that unidentified parole officials allegedly took adverse action against him. *Id.* at ¶¶ 59-60. The Court will also presume that the actions alleged are sufficient to establish the adverse action requirement. The pleading before the Court, however, is insufficient to assert a causal connection between Plaintiff's conduct and the alleged adverse action. He alleges only that the alleged retaliatory actions took place close in time to his protected speech. Mere temporal proximity alone, however, is insufficient to state a claim. *Sloane v. Mazzuca*, 2006 WL 3096031, at \*14 (S.D.N.Y. Oct. 31, 2006). Plaintiff does not identify who he contacted at parole or who the "high ranking official of Parole" was that took action against him or who ransacked his home. [1] As a result of "Plaintiff's failure to identify any individual Defendant who is personally responsible, Plaintiff has not pled facts from which it could be plausibly inferred that" the adverse actions alleged are causally related to the asserted protected conduct. *Solano v. New York*, 2021 WL 4134793, at \*8 (N.D.N.Y. Sept. 10, 2021).

---

[1]    This failure is an independent basis for dismissal of this claim. *Guillory v. Upstate Univ. Police*, 2021 WL 6274449, at \*4 (N.D.N.Y. Dec. 14,

Mitchell v. Annucci, Not Reported in Fed. Supp. (2022)

Case 5:24-cv-00377-GTS-TWD    Document 4    Filed 05/06/24    Page 31 of 47

2022 WL 7271377

2021), *report and recommendation adopted*, 2022 WL 35926 (N.D.N.Y. Jan. 4, 2022) ("Plaintiff's complaint is further flawed for failure to allege the actionable conduct attributable to each individual defendant.").

### C. Conspiracy

**\*3** Plaintiff next claims that officials of the Albany Police Department conspired to make false allegations against him in an effort to deny his Fifth Amendment right to be presumed innocent and his Fourteenth Amendment right to due process. *Id.* at ¶¶ 61-65.

This claim should be dismissed as wholly conclusory. "To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts. Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *O'Neil v. Bebee*, 2010 WL 502948, at \*9 (N.D.N.Y. Feb. 10, 2010) (internal citations and quotation marks omitted); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (applying same standard to section 1985 conspiracy claim). "For purposes of a court's review under section 1915(e) ... it is not sufficient merely to [allege] the existence of a conspiracy in wholly conclusory terms." *McIntyre v. Battisti*, 2016 WL 791467, at \*5 (N.D.N.Y. Feb. 4, 2016), *report and recommendation adopted*, 2016 WL 799334 (N.D.N.Y. Feb. 29, 2016). Plaintiff has failed to offer anything more than conclusory allegations of a conspiracy and his claims should, therefore, be dismissed. *See Wilson v. Cty. of Onondaga*, 2021 WL 5971316, at \*9 (N.D.N.Y. Apr. 21, 2021), *report and recommendation adopted*, 2021 WL 5967130 (N.D.N.Y. Dec. 16, 2021).

### D. Judge Joyce

Plaintiff's Fourth Cause of Action[2] asserts Eighth and Fourteenth Amendment violations against Albany County Family Court Judge Amy Joyce. Sec. Am. Compl. at ¶¶ 5, 66-67. Plaintiff claims that Judge Joyce violated his rights by issuing an order of protection that she "had no legal jurisdiction or authority to issue." *Id.* at ¶ 66.

[2] The Second Amended Complaint contains a typographical error, listing two "Third" Causes of Action. Beginning with this claim, the Court refers to the claims in sequential order, not using the designation that results from that error.

In actions brought under 42 U.S.C. § 1983, judges are entitled to absolute immunity from suit for actions taken in the performance of their judicial duties. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (noting that "[j]udges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.' ") (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). "Issuing an order of protection is clearly related to the exercise of the judge's judicial function." *Coleman v. Oneida Cty. Dist. Atty.*, 2014 WL 4966138, at \*3 n.3 (N.D.N.Y. Oct. 1, 2014). While Plaintiff maintains that Judge Joyce lacked authority to issue orders of protection, Family Court judges in New York clearly do have such authority. *See Aloi v. Nassau Cty. Sheriff's Dep't*, 9 Misc. 3d 1050, 1053, (Sup. Ct. 2005) ("A Family Court judge has the authority to issue orders of protection."). To the extent that Plaintiff alleges that Judge Joyce erred in exercising that authority, such a claim does not destroy her immunity. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997). The allegations in this case bear on Judge Joyce's official duties as a judge and are therefore barred by absolute immunity. *Young v. Selsky*, 41 F.3d at 51; *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("acts arising out of, or related to, individual cases before the judge are considered judicial in nature").

### E. Anthony Annucci

**\*4** Though named as a Defendant nominally as the head of the Department of Corrections and Community Supervision, Plaintiff makes no factual allegations that Defendant Annucci has been personally involved in any of the facts alleged. Given that personal involvement is a prerequisite to liability under section 1983 and liability of supervisory officials requires some direct, personal involvement, *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020), and no allegations in that regard have been made against Annucci, dismissal is appropriate as to him.

### F. State Law Defamation Claim

Finally, Plaintiff alleges a state law defamation claim against Craft and Braughler for allegedly stating to people that Plaintiff was a drug dealer and had raped a child. Sec. Am. Compl. at ¶¶ 68-70. Given the recommendation here that Plaintiff's federal causes of action be dismissed, it is recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claim. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Reus v. Arthur*, 2020 WL 5122376, at *7 (N.D.N.Y. Aug. 31, 2020).

### III. CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Second Amended Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 7271377

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 33 of 47

Mitchell v. Annucci, Not Reported in Fed. Supp. (2022)

2022 WL 4354360

2022 WL 4354360
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dontie S. MITCHELL, Plaintiff,

v.

Anthony J. ANNUCCI, and
John or Jane Doe, Defendants.

1:22-CV-613
|
Signed September 20, 2022

**Attorneys and Law Firms**

DONTIE S. MITCHELL, Plaintiff, Pro Se, 69 Second
Avenue, 2nd Floor, Albany, NY 12202.

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1** On June 9, 2022, *pro se* plaintiff Dontie Mitchell
("plaintiff"), who is on post-release supervision following a
term of imprisonment, filed this 42 U.S.C. § 1983 action
alleging that defendants violated his First Amendment rights.
Dkt. No. 1. According to plaintiff's initial complaint, he
has "informally adopted" a twelve-year-old boy and refused
requests from the child's mother to stay away from him. *Id.*
The complaint alleged that the child's mother has filed a police
report that resulted in a more restrictive modification to the
conditions of his post-release supervision. *Id.* Along with his
complaint, plaintiff sought leave to proceed *in forma pauperis*
("IFP Application"). Dkt. No. 2. Thereafter, plaintiff also
sought to obtain ECF credentials for purposes of electronic
filing. Dkt. No. 3.

On June 9, 2022, plaintiff moved on an emergency basis for
a temporary restraining order that would prevent defendants
from enforcing a Special Parole Condition that prevents
him from having any contact with minors, including the
minor children with whom he has established a mentorship
relationship. *See* Dkt. No. 4. That motion was denied on June
10, 2022, and this matter was referred to U.S. Magistrate
Judge Daniel J. Stewart for an initial review of the sufficiency
of the pleading. Dkt. No. 6.

On June 24, 2022, Judge Stewart granted plaintiff's IFP
Application, Dkt. No. 7, denied plaintiff's request for
ECF credentials, Dkt. No. 8, and advised by Report &
Recommendation ("R&R") that plaintiff's complaint be
dismissed without prejudice, *id.* As Judge Stewart explained,
plaintiff had failed to allege that he engaged in any
constitutionally protected activity, especially in light of his
admission that his efforts to "mentor" the minor child "are
contrary to the wishes of the parent." *Id.* However, in light
of plaintiff's *pro se* status, Judge Stewart recommended that
plaintiff be given an opportunity to amend his pleading. *Id.*
That R&R was adopted in full over plaintiff's objections on
July 13, 2022. Dkt. No. 11. Thereafter, plaintiff filed a Second
Amended Complaint. [1] Dkt. No. 12.

[1]     Plaintiff also re-asserted his request for a TRO
        that would preclude defendants from enforcing the
        Special Parole Condition. Dkt. No. 13. That motion
        was denied while plaintiff's amended complaint
        was under review. Dkt. No. 14.

On August 29, 2022, Judge Stewart advised by R&R that
plaintiff's Second Amended Complaint be dismissed. Dkt.
No. 15. In Judge Stewart's view, plaintiff's amended pleading
—which alleges a substantial similar set of facts related
to plaintiff's mentorship relationship with youth in the
community—failed to cure the defects previously identified.
*Id.* And because plaintiff's federal claims failed to survive
initial review, Judge Stewart also recommended that the Court
decline to exercise supplemental jurisdiction over plaintiff's
related claim under state law. *Id.*

Plaintiff has filed objections. Dkt. No. 16. Upon *de novo*
review, the R&R will be accepted and adopted in all respects.
*See* 28 U.S.C. § 636(b)(1)(C).

 **\*2** Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED;

3. Plaintiff's § 1983 claims are DISMISSED without further
leave to amend;

4. Plaintiff's state law claims are DISMISSED without
prejudice to renew in state court.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4354360

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3881496
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Stephen L. SCHEIDEL, Plaintiff,

v.

Michelle KOSSE; Robert J. Fagan; Michelle
Borzillo; Richard B. Frye; Chris J. Conanan;
Tommie Barnes; James R. Lawrence; Henry R.F.
Griffin; Erica F. Bovenzi; Robert Feldman; Barbara
Pfaffenberger; and Joyce Yamaski, Defendants.

No. 5:09–CV–1277 (GTS/GHL).
|
Sept. 28, 2010.

**Attorneys and Law Firms**

Stephen L. Scheidel, Syracuse, NY, pro se.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this *pro se* civil
rights action filed by Stephen L. Scheidel. ("Plaintiff") is
United States Magistrate Judge George H. Lowe's Report–
Recommendation recommending that Plaintiff's Complaint
be dismissed with prejudice, and that Plaintiff's pending
motion to appoint counsel (Dkt. No. 2) and letter-motion for
a three-judge panel (Dkt. No. 4) be denied as moot (Dkt. No.
6). For the reasons that follow, the Report–Recommendation
is accepted and adopted in its entirety; Plaintiff's Complaint
is dismissed; and his motion to appoint counsel and letter-
motion for a three-judge panel are denied as moot.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed his Complaint on November 15, 2009. (Dkt.
No. 1.) Construed with the utmost of liberality, Plaintiff's
Complaint alleges that the above-named employees of the
Federal Deposit Insurance Corporation ("FDIC") caused
the FDIC to wrongfully withdraw its offer of employment
to Plaintiff as a bank examiner in 2008 after a criminal
background check revealed that he had been convicted of

the felony of embezzlement from an employee pension fund,
pursuant to 18 U.S.C. § 664, in 1992. (*See generally,* Dkt. No.
1 [Plf.'s Compl.].) Based on these factual allegations, Plaintiff
asserts a host of claims under the United States Constitutions
and related New York State law. For a more detailed recitation
of these claims, and the factual allegations giving rise to them,
the Court refers the reader to the Complaint in its entirety.

### B. Procedural History

On May 5, 2010, Magistrate Judge Lowe issued a Report–
Recommendation, in which he recommended that the
Complaint be dismissed with prejudice, pursuant to U.S.C.
§ 1915(e), based on his finding that the underlying claims
are duplicative of those claims raised in Plaintiff's separately
pending action against a federal agency, *Scheidel v. Fed.
Deposit Ins. Corp.,* No. 5:09–CV–0114 (N .D.N.Y.). (Dkt. No.
6.)

On May 10, 2010, Plaintiff filed a response to the
Report–Recommendation, which was docketed as an
"Objection." (Dkt. No. 7.) In his response, Plaintiff argues
that he made a "procedural mistake" in filing this action as
a separate proceeding. (*Id.*) He explains that he made the
mistake because he believed he had exhausted the right to
amend his Complaint in his prior action, *Scheidel v. Fed.
Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y). (*Id.*) As
a result, Plaintiff requests that the Court withdraw this action
and file it as a "cross-complaint" in Case No. 5:09–CV–0114.
(*Id.*)

Earlier today, the Court issued a Decision and Order in the
related case of *Scheidel v. Fed. Deposit Ins. Corp.,* No.
5:09–CV–0114 (N.D.N.Y.), dismissing Plaintiff's Amended
Complaint in its entirety. In that Decision and Order, the
Court found, among other things, as follows: (1) Plaintiff's
claim for money damages against the FDIC arising out of
the FDIC's alleged violation of the *Ex Post Facto* Clause is a
*Bivens* claim that is not actionable against the FDIC; (2) even
if the claim were actionable, Plaintiff failed to allege facts
plausibly suggesting that the FDIC violated the *Ex Post Facto*
Clause; (3) Plaintiff's claim alleging a constitutional violation
premised on the Fourteenth Amendment is not actionable
because the FDIC is not a state actor; (4) Plaintiff's Fifth
Amendment claim is a *Bivens* claim that is not actionable
against the FDIC; (5) Plaintiff did not have a property right
in his employment offer, nor a "Fifth Amendment right
under New York State law" (or any right under federal
or state law) that was violated as a result of the FDIC
deeming his certificate of relief of disabilities invalid; (6)

Plaintiff failed to allege facts plausibly suggesting a claim for either deprivation of future employment or interference with prospective economic advantage; (7) even if Plaintiff had alleged facts plausibly suggesting a claim for deprivation of future employment or interference with prospective economic advantage, such a claim is specifically barred by the FTCA; (8) Section 702 of the Administrative Procedure Act ("APA") does not confer jurisdiction to this Court to award Plaintiff monetary damages on his claim that the FDIC "unlawful[ly] interpret [ed]" 12 C.F.R. 336 sub part B; (9) to the extent that Plaintiff seeks relief that is not monetary, because Plaintiff's "unlawful interpretation" claim is cognizable under Section 1346(b), the FDIC "cannot be sued in its own name"; and (10) 12 C.F.R. § 336.4 is not an "unlawful" regulation.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review Governing a Report–Recommendation

**\*2** When specific objections are made to a magistrate judge's report-recommendation, the Court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1)(C). [1] When general objections are made to a magistrate judge's report-recommendation, the Court reviews the report-recommendation for clear error or manifest injustice. *See Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). [2] Similarly, when a party makes no objection to a portion of a report-recommendation, the Court reviews that portion for clear error or manifest injustice. *See Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) [citations omitted]; Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition [citations omitted]. After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

[1]   On *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1)(C). However, a district court will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g .,* Paddington Partners v.

*Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate").

[2]   *See also Vargas v. Keane,* 93–CV–7852, 1994 WL 693885, at \*1 (S.D.N.Y. Dec. 12, 1994) (Mukasey, J.) ("[Petitioner's] general objection [that a] Report ... [did not] redress the constitutional violations [experienced by petitioner] ... is a general plea that the Report not be adopted ... [and] cannot be treated as an objection within the meaning of 28 U.S.C. § 636."), aff'd, 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895 (1996).

### B. Standard Governing Review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)

Magistrate Judge Lowe correctly recited the legal standard governing a district court's review of complaints submitted by *pro se* plaintiffs seeking to proceed *in forma pauperis* (Dkt. No. 6, at 1–3). As a result, this standard is incorporated by reference in this Decision and Order.

## III. ANALYSIS

As an initial matter, the Court does not construe Plaintiff's response to Magistrate Judge Lowe's Report–Recommendation as an Objection for purposes of 28 U.S.C. § 636(b)(1)(C). Rather, the Court construes Plaintiff's response as a notice of voluntary dismissal of the current action pursuant to Fed.R.Civ.P. 41(a) (1)(A), conditioned on the Court's permitting Plaintiff to amend his Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.) to add the above-captioned Defendants as parties to that action. As a result, the Court must review the Report–Recommendation only for clear error.

After carefully reviewing all of the papers in this action, including Magistrate Judge Lowe's Report–Recommendation, the Court concludes that Magistrate Judge Lowe's thorough Report–Recommendation is correct in all

respects. (Dkt. No. 6 [Report–Recommendation].) Magistrate Judge Lowe employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (*Id.*) As a result, the Court accepts and adopts the Report–Recommendation in its entirety for the reasons stated therein.

Having concluded that Plaintiff's Complaint is duplicative of his Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), the Court must address Plaintiff's request to file a Second Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), adding the above-captioned Defendants as Defendants in that action. For the following seven reasons, the Court rejects Plaintiff's request.

**\*3** First, as explained above in Part I.B. of this Decision and Order, earlier today the Court issued a Decision and Order dismissing Plaintiff's Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.). As a result, no action is pending in which Plaintiff may file a Second Amended Complaint.

Second, because Plaintiff has already filed an Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), and because he has not obtained the written consent of the defendant in that action, Plaintiff must file a motion for leave to amend his Amended Complaint, attaching a copy of his proposed amended pleading and specifically identifying the proposed amendments. *See* Fed.R.Civ.P. 15(a)(2); N.D.N.Y. L.R. 7.1(a) (4). He has not done so. Moreover, even if he had done so, the Court would deny his motion as unsupported by a showing of cause. Furthermore, setting aside the futility of the proposed amendment (described below), the Court finds that the FDIC would be unduly prejudiced by such an amendment, because the FDIC has spent a significant amount of time and resources drafting a motion to dismiss, drafting a reply memorandum of law, and attending mediation.

Third, to the extent that Plaintiff seeks to add to the non-actionable claims asserted in Case No. 5:09–CV–0114 any allegations that are currently asserted in his Complaint in this action, the allegations currently asserted in his Complaint in this action would not add anything of substance to the non-actionable claims that were asserted in Case No. 5:09–CV–0114.

Fourth, with regard to his "Bill of Attainder" and First Amendment claims, Plaintiff has failed to state a claim upon which relief can be granted. Instead, Plaintiff has alleged, in conclusory fashion, that the above-captioned Defendants "made the 'adjudication' to rescind [his offer of employment,]" and did not subsequently respond to his inquiries and/or grant his request for a hearing. Such allegations do not plausibly suggest a claim arising under the Bill of Attainder clause or the First Amendment.

Fifth, with regard to Plaintiff's *Bivens* claim that the above-captioned Defendants violated his rights under the Fifth Amendment, as well as his claim that the above-captioned Defendants "unlawful[ly] interpret[ed]" 12 C.F.R. § 336(B), to the extent these claims are brought against the above-captioned Defendants in their official capacities, such claims are barred for the reasons stated in the Court's Decision and Order in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.). *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994) (noting that "an action against ... federal officers in their official capacities is essentially a suit against the United States").

Sixth, to the extent that Plaintiff's *Bivens*-type claim that the above-captioned Defendants violated his rights under the Fifth Amendment is brought against the above-captioned Defendants in their individual capacities, as the Court noted in its Decision and Order in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), rescission of Plaintiff's offer of employment, which was specifically conditioned upon passing a felony background check, does not constitute deprivation of a "property right" under the Constitution. As a result, it would be futile to allow Plaintiff to assert a Fifth Amendment claim against the above-captioned Defendants in their individual capacities.

**\*4** Seventh, and finally, to the extent that Plaintiff's claim that the above-captioned Defendants "unlawful[ly] interpret[ed]" 12 C.F .R. § 336(B) is brought against the above-captioned Defendants in their individual capacities, pursuant to Section 702 of the APA, judicial review of action from an agency of the United States, or an officer or employee of that agency, is not appropriate. As a result, it would be futile to allow Plaintiff to assert a claim for money damages against the above-captioned Defendants in their individual capacities, arising out of their alleged unlawful interpretation of 12 C.F.R. § 336(B). [3]

---

[3]    Plaintiff's Complaint does not seek any relief other than money damages. (*See generally* Dkt. No. 1.)

For all of these reasons, the Court rejects Plaintiff's request to file a Second Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), adding the above-captioned Defendants as Defendants in that action.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Lowe's Report–Recommendation (Dkt. No. 6) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED*** in its entirety; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 2) and Plaintiff's letter-motion requesting a three-judge panel (Dkt. No. 4) are ***DENIED* as moot;** and it is further

**ORDERED** that Plaintiff's request to file a Second Amended Complaint in *Scheidel v. Fed. Deposit Ins. Corp.,* No. 5:09–CV–0114 (N.D.N.Y.), adding the above-captioned Defendants as Defendants in that action, is ***DENIED.***

The clerk is directed to enter judgment in favor of the defendants and close this case.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from this Decision and Order would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3881496

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 967059
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barton DePAUL, Plaintiff,

v.

James HELMER, Defendant.

No. 6:10–CV–00813 (LEK–ATB).
|
March 21, 2012.

**Attorneys and Law Firms**

Barton Depaul, Beacon, NY, pro se.

David H. Walsh, IV, Barth, Sullivan Law Firm, Syracuse, NY, for Defendant.

*MEMORANDUM–DECISION and ORDER*

LAWRENCE E. KAHN, District Judge.

## I. INTRODUCTION

 **\*1** Plaintiff Barton DePaul ("Plaintiff" or "DePaul"), proceeding *pro se* and *in forma pauperis,* commenced this § 1983 civil rights action by filing a Complaint on July 6, 2010. Dkt. No. 1 ("Complaint"). Plaintiff then filed an Amended Complaint on July 28, 2010. Dkt. No. 8 ("Amended Complaint"). Defendant James Helmer, an investigator with the Oneida County District Attorney's Office ("Defendant" or "Investigator Helmer") filed an Answer to the Complaint on August 9, 2010. Dkt. No. 12 ("Answer"). On April 6, 2011, United States Magistrate Judge Andrew T. Baxter ordered Defendant to file an answer or otherwise respond to Plaintiff's Amended Complaint by April 30, 2011. Dkt. No. 31. Presently before the Court is Defendant's Motion to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b) (6).[1] Dkt. No. 35–1 ("Motion"). Plaintiff filed a Response in opposition to Defendant's Motion, and Defendant filed a Reply. Dkt. Nos. 42 ("Response"), 43 ("Reply").

---

[1]     The Court notes that Plaintiff's Amended Complaint was filed before Defendant filed his Answer to Plaintiff's initial Complaint, and well before Defendant filed the present Motion. Absent leave of the Court, Defendant's Motion would

have been well beyond the time limits for responsive pleadings prescribed by Fed.R.Civ.P. 12(a). However, this time limit may be extended by Court order, *see* Fed.R.Civ.P. 6(b), and Magistrate Judge Baxter directed Defendant to respond by Order filed April 6, 2011. Dkt. No. 31. In any event, because Plaintiff is proceeding *in forma pauperis,* 28 U.S .C. § 1915(e)(2)(B) directs the Court to "dismiss the case at any time if the court determines that the action ... fails to state a claim on which relief may be granted."

## II. BACKGROUND

Plaintiff claims that on May 19, 2010, Investigator Helmer ordered his arrest "on charges of no merit." Am. Compl. at 4. Plaintiff alleges that he had been "helping [Investigator] Helmer on a cold murder case." *Id.* at 5. Plaintiff appears to claim that Helmer "falsely accused" Plaintiff of pulling a "B–B gun" on him, and "lied to get [him] indicted." Dkt. No. 8–1 ("Am.Compl.Ex.1") at 1. Plaintiff also alleges that his Fourteenth Amendment rights were violated by Investigator Helmer "because he lied on court minutes trying to bury me in prison." Am. Compl. at 5. Plaintiff also alleges that Investigator Helmer released information about Plaintiff's cooperation with the District Attorney's Office to the media, thereby "label[ing him] as a rat informant ... and now fighting to get [him] killed." *Id.* Plaintiff alleges that this led to a fight with another inmate, resulting in injuries to Plaintiff. *Id.*

Plaintiff submitted the Oneida County grand jury indictment that arose out of the "B–B gun" incident, in which Plaintiff was charged with third degree criminal possession of a weapon, second degree menacing, and second degree aggravated harassment. *Id.* at 7; Am. Compl. Ex. 1 at 5. The indictment states that Plaintiff "pointed out what appeared to be a pistol or other firearm at Oneida County District Attorney's Chief Investigator James Helmer and stated, 'Give me all your money, you [expletive].' " Am. Compl. at 7. However, Plaintiff claims that he "was just bustin chops. After [eighteen] months of James Helmer doing it to me I thought I could do it to James." Am. Compl. Ex. 1 at 1.

The Court takes judicial notice of Plaintiff's conviction arising out of this arrest and indictment, as well as his continued incarceration at Fishkill Correctional Facility.[2] *See Wingate v. Gives,* No. 05 Civ. 1872, 2008 WL 5649089, at \*3 n. 7 (S.D.N.Y. Apr.13, 2008) (taking judicial notice of conviction); *Williams v. City of New York,* No. 07 Civ. 3764,

2008 WL 3247813, at *2 (S.D.N.Y. Aug.7, 2008) (taking judicial notice of continued incarceration).

2    This information was obtained on March 19, 2012 via the New York State Department of Corrections and Community Supervision Inmate Population Information Search page, located at http://nysdoccslookup.doccs.ny.gov/.

### III. STANDARD OF REVIEW

**\*2** In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1249. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Finally, the Court is mindful of the principle that a *pro se* litigant's papers are to be construed liberally. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citations omitted). Accordingly, the Court must interpret Plaintiff's submissions to "raise the strongest arguments that they suggest." *Dias v. United States,* 517 F.3d 608, 613 (2d Cir.2008) (internal quotation and citation omitted). At the same time, the Court is "not obliged to reconcile [a *pro se]* plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Koulkina v. City of New York,* 559 F.Supp.2d 300, 314 (S.D.N.Y.2008) (quotation and citations omitted). Where such a contradiction exists, the *pro*

*se* plaintiff's allegations "are insufficient to defeat a motion to dismiss." *Id.*

### IV. DISCUSSION

Reading Plaintiff's Amended Complaint liberally, Plaintiff appears to assert § 1983 causes of action for: (1) false arrest; (2) denial of the right to a fair trial; and (3) conspiracy. The Court addresses each of these claims in turn.

#### A. False Arrest

Plaintiff claims that Defendant ordered his arrest "on charges of no merit." Am. Compl. at 4. "To state a claim under § 1983 for false arrest, the plaintiff must show a violation of his Fourth Amendment right to remain free from unreasonable seizures, 'which includes the right to remain free from arrest absent probable cause.' " *Barmapov v. Barry,* No. 09–CV–3390, 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) (quoting *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006)). "The existence of probable cause to arrest ... 'is a complete defense to an action for false arrest.' " *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)); *see also Cameron v. Wise,* No. 09 Civ. 967, 2011 WL 1496341, at *5 (S.D.N.Y. Apr. 20, 2011). "[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir.1986). Because Plaintiff was subsequently convicted, there was probable cause for his arrest and his claim for false arrest is insufficient as a matter of law.

#### B. Right to a Fair Trial

**\*3** Plaintiff's claim that Defendant lied in court to secure his conviction—thereby violating his Fourteenth Amendment right to a fair trial—is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Supreme Court held that "if a judgment in favor of the plaintiff [in a § 1983 suit] would necessarily imply the invalidity of his conviction or sentence[,] the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. Here, Plaintiff's claim that Defendant's testimony was perjured would clearly implicate the validity of his conviction. *See, e.g., Perez v. Cuomo,* No. 09–CV–1109, 2009 WL 1046137, at *7 (E.D.N.Y. Apr.17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.") (citations and quotations omitted). As Plaintiff

has not demonstrated that his conviction has already been invalidated, and as the Court's inquiry confirms that he is still incarcerated on these charges, Plaintiff's fair trial claim is dismissed pursuant to *Heck.* [3]

[3]   Such dismissal is without prejudice, as "the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner,* 179 F.3d 48, 52 (2d Cir.1999) (citing *Heck,* 512 U.S. at 487).

### C. Conspiracy

Plaintiff alleges that Investigator Helmer disclosed to the media that Plaintiff was acting as an informant for the District Attorney's Office, and that Plaintiff was attacked by another inmate as a result. Reading the Amended Complaint liberally, Plaintiff appears to assert that Investigator Helmer conspired with a private actor to cause him harm. To state a claim of conspiracy pursuant to § 1983, a plaintiff must sufficiently allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that and causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). Here, Plaintiff fails to state a plausible claim for relief. Beyond mere conclusory statements, he pleads no facts that support even an inference that Defendant was working in concert to cause harm to Plaintiff. [4] Accordingly, this claim is dismissed for failure to state a claim upon which relief may be granted.

[4]   The Court notes that Plaintiff brought a similar claim against a different defendant in another civil action in this District. *See DePaul v. McNamara,* No. 6:10–CV–1123, Dkt. No. 1 (N.D.N.Y. filed Sept. 20, 2010). There, he claimed that District Attorney Scott McNamara had conspired with Investigator Helmer "for Plaintiff's murder by wrongfully disclosing that

Plaintiff 'worked for' the District Attorney's Office apparently as an informant." *Id.,* Dkt. No. 7 (report-recommendation). This claim was found to be implausible, and dismissed for failure to state a claim upon which relief may be granted. *Id.,* Dkt. No. 8 (adopting report-recommendation).

The Court notes that a *pro se* action should generally not be dismissed without "granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugo,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. *Id.* Further, leave may be denied where a plaintiff has already amended his or her complaint once. *Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct.24, 2002). Here, Plaintiff has already submitted one Amended Complaint, and the flaws in that Amended Complaint are substantive in nature such that better pleading would not cure them. As a result, it would be futile to afford Plaintiff an additional opportunity to amend his pleading.

### V. CONCLUSION

 **\*4**   Accordingly, it is hereby:

**ORDERED,** that Defendant's Motion (Dkt. No. 35) to dismiss Plaintiff's Amended Complaint is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Amended Complaint (Dkt. No. 8) is **DISMISSED** without prejudice; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2012 WL 967059

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Livingston v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 1091464

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 42 of 47

2021 WL 1091464
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Richard LIVINGSTON, Petitioner,

v.

Anthony J. ANNUCCI, Acting Commissioner,
New York State Department of Corrections
and Community Supervision, [1] Respondent.

[1]     Because Livingston has been released from state
        prison, Anthony J. Annucci, Acting Commissioner,
        New York Department of Corrections and
        Community Supervision, is substituted as
        Respondent. FED. R. CIV. P. 25(c).

No. 9:18-cv-00803-JKS
|
Signed 03/22/2021

**Attorneys and Law Firms**

Richard Livingston, Syracuse, NY, pro se.

Jodi A. Danzig, New York State Attorney General, New York,
NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior United States District
Judge

**\*1**  Richard Livingston, a former New York state
prisoner proceeding *pro se*, filed a Petition for a Writ
of Habeas Corpus with this Court pursuant to 28
U.S.C. § 2254. At the time he filed his Petition,
Livingston was in the custody of the New York State
Department of Corrections and Community Supervision
("DOCCS") and incarcerated at Great Meadow Correctional
Facility. The DOCCS's inmate locator website (http://
nysdoccslookup.doccs.ny.gov/, Department ID Number 14-
B-3634), indicates that Livingston was conditionally released
to parole supervision on September 15, 2019, and he
submitted a change of address showing a private address
effective as of that date, Docket No. 39. Respondent has
answered the Petition, and Livingston has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 24, 2013, Livingston was charged with third-
degree criminal possession of a controlled substance
following a traffic stop. Livingston, represented by counsel,
subsequently pleaded guilty to the charge and was accepted
into the Syracuse Community Treatment Court ("SCTC"). [2]
Livingston was informed that his successful completion of
the SCTC program would result in a misdemeanor conviction
and a sentence of conditional discharge. Prior to accepting
his plea, the county court explained that, if Livingston
failed to complete the program, he could be sentenced to a
maximum of twelve years in prison. Livingston confirmed his
understanding of the potential sentence upon non-completion,
and indicated his desire to elect the SCTC option.

[2]     The SCTC "process[es] drug cases through
        the expeditious entry of eligible defendants
        into judicially monitored drug treatment."
        *See* Syracuse City Court-Syracuse Community
        Treatment Court, Information Page, *available
        at* http://ww2.nycourts.gov/courts/5jd/onondaga/
        city/drug.shtml.

During the SCTC program, Livingston tested positive for
cocaine and marijuana six times, and was sanctioned three
times. On May 1, 2014, Livingston received a warning for
missing treatments. A little over a month later, he was arrested
and received a last chance warning (the "June 3, 2014,
arrest"). On July 17, 2014, Livingston failed to appear in
court, prompting the SCTC to issue a bench warrant. He
was terminated from the SCTC program on October 23,
2014, after a search warrant executed the day prior revealed
Schedule II narcotics and various drug paraphernalia in
Livingston's residence and in a home where Livingston was
found (the "October 22, 2014 arrest"). [3]  On November 25,
2014, Livingston was sentenced as a second felony offender
to six years' imprisonment with three years of post-release
supervision.

[3]     Although Livingston was charged with various
        offenses relating to the October 22, 2014, events,
        Respondent states that the People never presented
        those charges to the grand jury. Docket No. 20 at 9.

Livingston then filed in the SCTC a *pro se* motion to set aside
his sentence pursuant to New York Criminal Procedure Law
("CPL") § 440.20. According to Livingston, he was entitled

Livingston v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 1091464

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 43 of 47

to that relief because: 1) the plea court and the SCTC failed to advise him of the conduct that could result in the imposition of an enhanced sentence; 2) his right to due process was violated when the sentencing court imposed an enhanced sentence based on his June 3, 2014, arrest because those charges were dismissed; 3) his right to due process was violated when the sentencing court imposed an enhanced sentenced based on his October 22, 2014, felony charges for which he was never indicted; and 4) his right to due process was violated when the sentencing court summarily imposed an enhanced sentence without inquiring about the arrests that triggered the enhancement; and 5) the prosecutor made false and inflammatory remarks at the sentencing proceeding as to the new felony charges. The SCTC denied Livingston's motion in a reasoned, unpublished opinion issued on September 22, 2015. Livingston moved for permission to file a belated leave application in the Appellate Division, which was denied without comment on February 24, 2016.

 **2** Through counsel, Livingston then directly appealed his conviction, arguing that the appeal waiver contained in his SCTC contract was unenforceable and that his sentence was harsh and excessive. Livingston requested that the Appellate Division of the New York Supreme Court reduce his sentence to time served or issue an order admitting him into the Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") program. Livingston also filed a supplemental *pro se* brief alleging that: 1) his arrest on June 3, 2014, was malicious, unlawful, and without basis; 2) his arrest on October 22, 2014, was the only aggravating factor in determining his sentence; 3) the prosecutor's statements at sentencing were inflammatory and unduly prejudicial; and 4) the sentence imposed was based on the prosecutor's unsupported assertions. The Appellate Division unanimously affirmed the judgment against Livingston in a reasoned opinion issued on March 16, 2018. *People v. Livingston,* 70 N.Y.S.3d 140, 141 (N.Y. App. Div. 2018). Although the Appellate Division agreed that he did not validly waive his right to appeal, it nonetheless concluded that his sentence was not unduly harsh or severe and summarily rejected the arguments in Livingston's *pro se* supplemental brief. *Id.* Livingston filed both a counseled and *pro se* application for leave to appeal in the Court of Appeals, which were denied without comment on May 30, 2018.

Livingston then filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on July 16, 2018. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Livingston argues that: 1) his right to due process was violated when the sentencing court imposed an enhanced sentence based on his June 3, 2014, arrest because the charges were dismissed; 2) his right to due process was violated when the sentencing court imposed an enhanced sentenced based on his October 22, 2014, felony charges for which he was never indicted; 3) the prosecutor's statements at sentencing were inflammatory and unduly prejudicial, and his right to due process was violated when the sentencing court imposed an enhanced sentenced based on the prosecutor's unsupported assertions; and 4) his right to due process was violated when the SCTC failed to give him an opportunity to show that the June and October 2014 arrests that triggered his termination were baseless. [4]

[4]    In his Petition, Livingston also requests bail pending review of his habeas petition. He provides no reason, however, to reconsider the reasoned decision of this Court, through a previously-assigned district judge, denying this request. *See* Docket No. 36. In any event, because Livingston has been released to parole supervision, his request is now moot. *See* Section III.A., *infra.*

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)

Livingston v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 1091464

("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke,* 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584 (2002).

**\*3** In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello,* 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith,* 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson,* 501 U.S. 722, 740 (1991); *Harris v. Reed,* 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker,* 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter,* 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez,* 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted). Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States,* 299 F.3d 123, 128 (2d Cir. 2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983). "[I]f an event occurs during the course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] ... must dismiss the case" as moot. *United States v. Blackburn,* 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

As aforementioned, a review of the DOCCS's inmate locator website indicates that, although Livingston was incarcerated at the time he filed his Petition, he was subsequently released on conditional parole. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna,* 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber,* 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer,* 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices,

Livingston v. Annucci, Not Reported in Fed. Supp. (2021)

Case 5:24-cv-00377-GTS-TWD   Document 4   Filed 05/06/24   Page 45 of 47

2021 WL 1091464

voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Moreover, a petitioner serving a term of supervised release is considered "in custody" for purposes of 28 U.S.C. § 2254. *Harvey v. People of the City of New York*, 435 F. Supp. 2d 175, 177 (E.D.N.Y. 2006) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). Accordingly, because Livingston is still in the custody of the New York DOCCS [5] and, in any event, still subject to collateral consequences of his conviction, his Petition has not been rendered moot by his release from prison, to the extent he challenges his underlying April 2013 conviction upon his guilty plea for third-degree criminal possession of a controlled substance.

[5]   A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Offender Information Data Definitions*, http://www.doccs.ny.gov/calendardatadefinitions.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached)").

**\*4**  Complicating matters here, however, is the fact that Livingston does not challenge directly the 2013 conviction. He does not contend that his guilty plea was unknowingly made, or that plea counsel rendered ineffective assistance. Rather, he challenges his 2014 termination from the SCTC program, which was based on two other arrests and various failed drug tests. But Livingston does not request in his prayer for relief that, as remedy of the alleged due process violations stemming from his termination from the program, that the Court issue an order requiring New York to reinstate him into the SCTC program. If he had, such claim could be considered moot because Livingston has already satisfied the sentence imposed and therefore the Court could not order such remedy. Instead, Livingston asks that he be re-sentenced to "the minimum term of 2 years or a full reversal," which would presumably have the effect of eliminating his remaining term of post-release supervision. Docket No. 1 at 19.

Assuming, without deciding, that Livingston's challenge to his 2014 termination from the SCTC program is not mooted

by his release from imprisonment and is properly raised in this Court by way of § 2254,[6] Livingston is not entitled to relief on the merits of his claims either. Although Livingston's Petition purports to raise four separate grounds for relief, they collapse into a single claim that the SCTC violated his due process rights by terminating him from the treatment program and imposing a six-year sentence without giving him an opportunity to show that the June and October 2014 arrests were baseless, and by relying on false information from the prosecution about those arrests in making its determination.

[6]   The records of this Court reflect that Livingston previously raised civil rights claims under 42 U.S.C. § 1983 relating to his October 22, 2014, arrest and its effect upon sentencing in the underlying conviction in this case. *See* Case No. 7:15-cv-0631 (TWD); *Livingston v. Henderson*, No. 7:15-cv-0631, 2019 WL 1427689 (N.D.N.Y. Mar. 29, 2019). The Court dismissed the suit for failure to state a claim and as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at \*7 ("a § 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original)). The Court in that case opined that the instant Petition "is the proper avenue by which [Livingston] may seek relief from his conviction or sentence." *Id.* at \*8 n.12.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "In evaluating due process claims, '[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.' " *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (quoting *Narumanchi v. Board of Trs. of the Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)).

Because a petitioner has no constitutionally-protectable interest in remaining in a drug treatment program, *see Moore v. Peters*, 92 F. Supp. 3d 109, 123 (W.D.N.Y. 2015), it appears that the only protected liberty interest here is Livingston's right to due process at sentencing. "[T]here is no doubt that the Due Process Clause is implicated at sentencing, and that

Livingston v. Annucci, Not Reported in Fed. Supp. (2021)

2021 WL 1091464

a defendant has a right to question procedures that lead up to the imposition of sentence." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)). However, all of the strict procedural safeguards and evidentiary limitations of a criminal trial are not required at sentencing. *Williams v. New York*, 337 U.S. 241, 250 (1949).

Moreover, a sentencing court is afforded "wide discretion" when determining appropriate sentences. *See, e.g.*, *Wasman v. United States*, 468 U.S. 559, 564 (1984); *Williams*, 337 U.S. at 246. Any information or circumstance shedding light on the defendant's background, history and behavior is proper for the sentencing judge to consider when the judge makes his or her determination. *Williams*, 377 U.S. at 249-50; *see also Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender"). This is to "ensure[ ] that the punishment will suit not merely the offense, but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted). However, due process is violated when the information on which the defendant is sentenced is "materially untrue" or is, in fact, "misinformation." *See Townsend v. Burke*, 334 U.S. 736, 741 (1948) (concluding sentencing based on "materially untrue" assumptions concerning a prisoner's criminal record was inconsistent with due process of law).

**\*5** In this case, however, Livingston fails to show that the sentencing court relied on materially untrue facts or misinformation. As the county court explained in rejecting Livingston's motion to set aside his sentence, it "made quite clear" at sentencing that it did not rely on the then-pending charges relating to his October 2014 arrest, and provided ample other reasons for supporting its sentencing determination aside from the events of June 2014:

> The sentencing minutes from November 25, 2014 clearly indicates a litany of violations by the defendant pertaining to positive tests of defendant showing marijuana, cocaine and alcohol use, relapses, failure to attend meetings, failure to complete programs which precipitated

the Court's "final, last chance warning" on July 17, 2014 being given to the defendant. Although this "final, last chance warning" is not provided for in the CPL, this Court allowed defendant to continue in the diversion program and released defendant from custody. Thereafter, defendant once again relapsed, failed to appear in Court and ultimately dropped out of his program.

The record thus demonstrates that the sentencing court did not violate Livingston's due process rights by relying on materially inaccurate or unreliable information when it terminated Livington from the SCTC program and imposed a six-year sentence. Furthermore, Livingston has not demonstrated, and this Court cannot conclude, that the New York Appellate Division's decision upholding the sentence is contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. In sum, Livingston is not entitled to habeas relief on any of his due process claims.

## V. CONCLUSION

Livingston is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

2021 WL 1091464

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1091464

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.